UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAMPAIGN LEGAL CENTER,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>)  Case No. 22-cv-1115 (APM) |
| **45COMMITTEE, INC.,** | )<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION

### I.

This case arrives before the court on a tortured procedural history. Plaintiff Campaign Legal Center ("CLC") has spent the better part of five years attempting to seek a resolution from the Federal Election Commission ("the FEC" or "the Commission") regarding its claim that Defendant 45Committee, Inc. ("45Committee") has violated federal campaign finance law. Plaintiff first filed an administrative complaint with the FEC in August 2018 through the statutorily prescribed process set out in the Federal Election Campaign Act ("FECA"). Roughly a year and a half later, CLC initiated a suit in federal court, seeking a determination that the FEC had failed to act on CLC's claim. The FEC never appeared to defend the suit. After a court in this District made the determination that the FEC had failed to act, in accordance with FECA, it ordered the Commission to remedy the failure within 30 days. That statutorily prescribed period passed with no *public* word from the Commission. As a result, as permitted by FECA, CLC initiated this lawsuit under FECA's citizen suit provision, asserting that 45Committee failed to organize and register as a political committee and fulfill its related reporting requirements, in violation of federal law.

Well, as it turns out, the Commission did act on CLC's administrative complaint. In June 2020, the Commission was unable to muster the necessary four votes to initiate an investigation of 45Committee. The same thing happened again in early December 2021, within the 30 days prescribed by the court in CLC's failure-to-act suit. But because the Commission never garnered the required number of votes to disclose these results, neither CLC nor the public became aware of its actions. Until recently, that is. After CLC initiated this case, the FEC publicly revealed the results of its June 2020 and December 2021 votes.

Before the court is Defendant's Motion to Dismiss CLC's citizen suit for want of jurisdiction or, alternatively, on the merits. See Mot. of Def. 45Committee to Dismiss, ECF No. 25 [hereinafter Def.'s Mot.]. Defendant asserts that (1) the court lacks subject matter jurisdiction; (2) the statute of limitations bars Plaintiff's claims; and (3) Plaintiff has not plausibly alleged a claim under FECA. See Def.'s Mot., Mem. of P. & A. in Supp. of Def.'s Mot., ECF No. 25-1 [hereinafter Def.'s Mem.]. As discussed below, the court does not reach the merits of Plaintiff's FECA claims because the court lacks jurisdiction to hear this case. Accordingly, Defendant's Motion to Dismiss is granted.

## II.

Under the FECA, any person may file an administrative complaint with the FEC alleging a violation of the Act. See 52 U.S.C. § 30109(a)(1). As part of the FEC's enforcement process, the Commission may decide "by an affirmative vote of 4 of its members" to investigate a complaint by making a finding that there is "reason to believe" a FECA violation occurred. Id. § 30109(a)(2). If four or more Commissioners vote to find "reason to believe" a violation occurred, then the FEC must notify the respondent of the alleged violation and its factual basis. Id. Three or fewer "reason to believe" votes means that an investigation is not authorized. Id.

With limited exceptions not relevant here, FEC proceedings on an administrative complaint remain confidential until the FEC "terminates its proceedings."  11 C.F.R. §§ 111.20–21; 52 U.S.C. § 30109(a)(12).  The FEC terminates an enforcement proceeding by "vot[ing] to close [the] enforcement file," 11 C.F.R. § 5.4(a)(4), after which the Commission must "advise both complainant and respondent by letter," *id.* § 111.9(b).  It takes four votes to "close the enforcement file."  *See* 52 U.S.C. § 30106(c) (stating that "all decisions of the Commission with respect to the exercise of its duties and powers . . . shall be made by a majority vote of the members of the Commission").

In certain circumstances, if the FEC does not act, FECA permits a private complainant to file suit to enforce the Act's provisions.  This involves a two-step process.  First, a complainant who is "aggrieved . . . by a failure of the Commission to act on [an administrative] complaint during the 120-day period beginning on the date the complaint is filed" may seek review in this District, in a so-called "delay suit."  52 U.S.C. § 30109(a)(8)(A).  In such a suit, the district court is asked to determine whether the FEC "fail[ed] to act" in a manner "contrary to law."  *Id.* § 30109(a)(8)(C).  Importantly, in order to respond to such a delay suit, at least four FEC Commissioners must vote to authorize the Commission to appear.  *Id.* §§ 30106(c), 30107(a)(6). If the court finds a violation, "the court may declare that . . . the failure to act is contrary to law" and "may direct the Commission to conform with such declaration within 30 days." *Id.* § 30109(a)(8)(C).

Then, as a second step, if the FEC "fail[s]" "to conform with [the court's] declaration," "the complainant may bring . . . a civil action to remedy the violation involved in the original complaint" directly against the alleged violator, often called a "citizen suit." *Id.*  Through the citizen suit, the complainant can prosecute the merits of the original administrative complaint on

3

which the FEC did not act.

### III.

In August of 2018, CLC filed an administrative complaint with the FEC alleging that 45Committee had violated FECA by failing to register as a political committee and to complete its related reporting obligations. Compl., ECF No. 1, ¶ 44. On March 24, 2020, having received no notice from the Commission concerning its administrative complaint, CLC sued the FEC in this District for unreasonable delay under § 30109(a)(8)(A). *Id.* ¶ 46.

Before the delay court, the FEC failed to answer CLC's complaint or otherwise appear. *Id.* ¶ 47. As a result, the delay court entered a default judgment on November 8, 2021 (the "November 8 Order"). *Id.* ¶ 48. It found that the FEC's "failure to act on plaintiff's administrative complaint is contrary to law." November 8 Order, *Campaign Legal Ctr. v. FEC*, No. 20-cv-809 (ABJ) (D.D.C. Nov. 8, 2021), ECF No. 25 (hereinafter *CLC I* Docket). The delay court further ordered "that [the FEC] act on the complaint within thirty days pursuant to 52 U.S.C. § 30109(a)(8)(C)." *Id.* The FEC did not respond to the court's order, nor did it notify CLC of any action taken during the 30-day period. Compl. ¶ 49.

As a result, on December 9, 2021, CLC filed a motion requesting that the delay court find that the Commission had failed to conform, and the delay court entered such an order on April 21, 2022 (the "April 21 Order"). *Id.* ¶¶ 50–51. The delay court found that the Commission "ha[d] not complied with the Court's November 8, 2021 Order within the time specified," and that CLC could "bring an action to enforce the FECA against the alleged violator pursuant to

4

52 U.S.C. § 30109(a)(8)(C)." April 21 Order, *CLC I* Docket, ECF No. 32, at 1; Compl. ¶ 51. CLC filed the instant lawsuit the very next day. *See* Compl.

After this suit commenced, 45Committee obtained previously unreleased records from the FEC, which revealed that the Commissioners in fact had held a reason-to-believe vote on CLC's administrative complaint on June 23, 2020. *See* Def.'s Reply in Supp. of Mot., ECF No. 29 [hereinafter Def.'s Reply], at 2; Def.'s Reply, Ex. C, ECF 29-3 [hereinafter Ex. C]. At the time, the FEC was comprised of only four commissioners. Two voted that there was reason to believe that a FECA violation had occurred; two voted that there was not. Def.'s Reply, Ex. D, ECF No. 29-4 [hereinafter Ex. D[1]], at 4. The Commission also failed to garner the requisite votes to close the file or to authorize the Office of General Counsel to appear in CLC's suit before the delay court. *Id.* at 4–5.[2] Consequently, the Commission's 2–2 deadlocked, reason-to-believe vote on June 23, 2020, was not disclosed to CLC, 45Committee, or the public.

Similar proceedings occurred almost 18 months later. The newly released records show that the Commission held a second reason-to-believe vote on December 2, 2021—within the 30-day period that the delay court had given the FEC to act. Ex. C at 2. By this time, the Commission had six members. Three Commissioners voted to find reason to believe, two voted that there was not, and one abstained. Ex. D at 6. The vote to close the file deadlocked 3–3, meaning the latest proceedings would remain concealed from public view, too. *Id.*

Only after the Commission's composition changed did it vote to close the file on August 29, 2022.[3] That vote triggered notice of the Commission's prior proceedings to CLC and

---

[1] ECF pagination is used for this exhibit.
[2] A *New York Times* story offers some insight into the reasons why some Commissioners refused to administratively close a matter even though it failed to garner the four votes required to proceed with an investigation. *See* Shane Goldmacher, *Democrats' Improbable New F.E.C. Strategy: More Deadlock Than Ever*, N.Y. TIMES (June 8, 2021), https://www.nytimes.com/2021/06/08/us/politics/fec-democrats-republicans.html.
[3] *See* Certification, In the Matter of 45Committee, Inc., available at https://eqs fec.gov/eqsdocsMUR/7486_13.pdf (last visited Mar. 30, 2023).

45Committee, as well as public disclosure. *Id.* 45Committee then brought the previously undisclosed proceedings to this court's attention. *See generally* Def.'s Reply.

## IV.

Before a court may "proceed at all in any cause," it must ensure that it possesses subject matter jurisdiction over the case before it. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The plaintiff bears the burden of establishing that the court has jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When evaluating a Rule 12 motion to dismiss for lack of subject matter jurisdiction, the court "must accept the factual allegations in the complaint as true," *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 871 (D.C. Cir. 2002), but may also consider "documents attached thereto or incorporated therein, and matters of which it may take judicial notice," *Stewart v. NEA*, 471 F.3d 169, 173 (D.C. Cir. 2006). *See* FED. R. CIV. P. 12(b)(1). Such judicially noticeable matters include "governmental agency actions." *D.C. Pro. Taxicab Drivers Ass'n v. District of Columbia*, 880 F. Supp. 2d 67, 72 (D.D.C. 2012).

## V.

The "jurisdictional" preconditions to filing a citizen suit under FECA "must be followed before a court may intervene."[4] *Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996) (per curiam). The statutory provision at issue speaks to two such conditions. First, a court must declare that the FEC's "failure to act is contrary to law," and second, the court may grant the FEC 30 days "to conform with such declaration." 52 U.S.C. § 30109(a)(8)(C). Only after the FEC fails to timely

---

[4] In a notice of supplemental authority, Plaintiff contends that the Supreme Court's recent decision in *Wilkins v. United States*, 598 U.S. __, 2023 WL 2655449 (Mar. 28, 2023), "demonstrates that the statutory prerequisites for filing a citizen enforcement suit set forth in [FECA] are not jurisdictional," such that Defendant's subject matter jurisdiction challenge fails. Pl.'s Notice of Supp. Auth., ECF No. 32, at 2. *Wilkins* is not, however, a case under FECA, but the Quiet Title Act. "[D]istrict judges . . . are obligated to follow controlling circuit precedent until either [the Circuit], sitting en banc, or the Supreme Court, overrule it." *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997). Controlling Circuit precedent may be "effectively overruled," but only if a later Supreme Court decision "eviscerates" its reasoning. *Perry v. MSPB*, 829 F.3d 760, 764 (D.C. Cir. 2016), *rev'd on other grounds*, 137 S. Ct. 1975 (2017). The court therefore must follow *Perot*'s dictate that FECA's preconditions to filing a citizen suit are "jurisdictional."

conform may the original complainant bring "a civil action to remedy the violation involved in the original complaint." *Id.*

Based on the information that is now before the court, it is clear that, under prong two of the inquiry, the FEC did not "fail to conform" as directed by the delay court. On November 8, 2021, the delay court ordered "that defendant act on the complaint within thirty days." November 8 Order, *CLC I* Docket, ECF No. 25. The Commission took a failed reason-to-believe vote on December 2, 2021, well within the 30 days following the delay court's November 8 Order. *See* Ex. C at 2. That vote resulted in a "deadlock" because fewer than four Commissioners voted in favor of finding a reason to believe. *Id.* Because the Commission took action within 30 days of the delay court's declaration, it "conform[ed]" as ordered, so this court straightforwardly lacks jurisdiction under FECA.

Plaintiff raises two main arguments to avoid this result.[5] First, it contends that this court is bound by the delay court's ruling that the FEC failed to "conform" with its failure-to-act declaration within 30 days. Pl. Campaign Legal Ctr.'s Opp'n to Def.'s Mot., ECF No. 26 [hereinafter Pl.'s Opp'n], at 13–14. CLC argues that "[a] citizen-suit court need not—and cannot—exercise the brand of quasi-appellate review over delay court decisions that Defendant seeks." *Id.* But to accept that argument would fly in the face of this court's "independent obligation to ensure [its] jurisdiction." *Muthana v. Pompeo*, 985 F.3d 893, 901 (D.C. Cir. 2021). Indeed, the court cannot ignore new evidence that was not before the delay court in assessing its own jurisdiction. *Cf. U. S. ex rel. Oliver v. Philip Morris USA, Inc.*, 101 F. Supp. 3d 111, 120–

---

[5] CLC devotes a substantial amount of its briefing arguing that this court cannot reconsider the merits of the delay court's failure-to-act determination. Pl.'s Opp'n at 13–15. It further contends that, even were the court to consider that determination anew in light of previously undisclosed FEC proceedings, the FEC's failure to act until June 23, 2020, constituted an unreasonable delay and therefore its inaction still was contrary to law. *See id.* at 23–26. This court need not, however, revisit the delay court's contrary-to-law finding in light of the new information because this court's decision rests on the second jurisdictional condition.

21 (D.D.C. 2015) (stating that the plaintiff "cites no precedent for his implicit contention that a court should refuse to consider a piece of evidence dispositive of subject matter jurisdiction simply because that evidence did not come to light at the earliest possible stage of the litigation"), *aff'd*, 826 F.3d 466, 469 (D.C. Cir. 2016) (affirming dismissal on jurisdictional grounds in False Claims Act case that rested on new evidence considered by the trial court).

Second, Plaintiff argues that a failed reason-to-believe vote does not constitute "action" under FECA, such that the December 2, 2021, vote does not vitiate this court's jurisdiction. *See* Pl.'s Opp'n at 18–23.  Plaintiff asserts that the FEC still failed to conform with the delay court's order because the December 2, 2021 vote did not result in dismissal of its administrative complaint and therefore "the Commission did not . . . act[] on CLC's complaint." *Id.* at 27.

This argument is foreclosed by precedent.  The D.C. Circuit has repeatedly acknowledged that Commission deadlocks, usually by a 3–3 vote, constitute "deadlock dismissal[s]" because, in the absence of a majority vote, the Commission is not authorized to engage in enforcement. *See, e.g.*, *Common Cause v. FEC*, 842 F. 2d 436, 448–49 (D.C. Cir. 1988); *Pub. Citizen, Inc. v. FERC*, 839 F.3d 1165, 1170 (D.C. Cir. 2016) ("[FECA] compels FEC to dismiss complaints in deadlock situations."); *see Democratic Campaign Comm. v. FEC*, 831 F.2d 1131, 1133 (D.C. Cir. 1987).

More importantly, regardless of whether a deadlocked vote itself—absent an administrative closure—constitutes a formal dismissal, the Circuit has squarely held that such a vote constitutes agency "action" as required by FECA.  As the Circuit has explained, "recognizing FECA deadlocks as agency action . . . is baked into the very text of the statute." *Pub. Citizen*, 839 F.3d at 1170.  Because "Congress uniquely structured the FEC toward maintaining the status quo," such a structure "increas[es] the appropriateness of recognizing deadlocks as agency action." *Id.*

at 1171. Thus, the Circuit held in *Public Citizen*, "the [FEC] engages in final agency action when, after receiving a complaint alleging certain types of campaign finance violations, it deadlocks." *Id.* at 1170; *see also Citizens for Resp. and Ethics in Wash. v. FEC*, 892 F.3d 434, 437 (D.C. Cir. 2018). Accordingly, the deadlock vote taken by the Commission on December 2, 2021, constituted an "action"—indeed, a final agency action—required by the delay court.

CLC contends that treating the December 2021 vote as a conforming act "would eviscerate FECA's failure-to-act provision by allowing the Commission to avoid judicial review by simply perpetuating delay indefinitely." Pl. Campaign Legal Ctr.'s Surreply in Opp'n to Def.'s Mot., ECF No. 30, at 8 (internal citation omitted). Not so. The FEC still must act within 30 days. A deadlocked vote within that time period may not satisfy a complainant that has waited out the FEC's inaction, but it is unquestionably a conforming "action" under Circuit precedent. Because the Commission timely conformed with the delay court's order, this court lacks jurisdiction over CLC's citizen suit.

## VI.

The court finds itself in the vexing position of having to dismiss a FECA citizen suit in which Plaintiff and the delay court followed the pre-suit conditions to the letter. After Plaintiff diligently pursued the appropriate administrative process and turned to the delay court for relief, the delay court made the determination that a citizen suit was available to Plaintiff based on the evidence that was then before the court. Only because of the FEC's "dysfunction" were CLC, 45Committee, and the delay court under the misimpression that the agency had not acted. *See Campaign Legal Ctr. v. FEC*, No. 20-cv-809 (ABJ), 2021 WL 5178968, at *9 (D.D.C. Nov. 8, 2021). Still, this court cannot permit a FECA citizen suit to proceed when the jurisdictional requirements are not met.

For the foregoing reasons, the court grants Defendant's Motion to Dismiss, ECF No. 25. A final, appealable order accompanies this Memorandum Opinion.

Dated: March 31, 2023

Amit P. Mehta
United States District Court Judge